Good morning, Your Honors. May it please the Court. William McNeil on behalf of Appellant Gregg Bosnak in this matter. I'd like to do two things initially for the Court. I'd like to reserve three minutes for rebuttal, if I may, and I want to inform the Court that we will not be pursuing the due process claims in this matter because they are precluded by Ninth Circuit authority that we've discovered. We appreciate that concession. The other thing I'd like to point out to the Court is that this is an appeal from a summary judgment, and the reason why I do that is to go to the standard of review, which is de novo, and I do that today because of the way the case came up. Apparently, the magistrate judge, under Rule 52, asked opposing counsel in this situation to provide findings of fact and conclusions of law, and the standard of review under those make sure that it is our position that the standard of review here is de novo. De novo. Oh, yeah, de novo. Right. But what, to me, the crucial issue in this case is whether or not the pretext showing was met by your client. Certainly. The issue of pretext. So if we assume there was a prima facie case established, why wasn't there a legitimate reason given by the employer for the termination? Well, the issue being, is there enough there to go to trial in that regard? And I would direct the Court to the arbitrator's decision with regard to all of the claims that were made against Mr. Bosnack and his termination essentially were found to be improper. He was granted, suspended for two weeks, but it was not based on the plethora of allegations that the city and county provided to the Court saying this is the reason why Mr. Bosnack was terminated. If the Court looks at the arbitrator's decision, he finds that all of these claims, except for the involvement with Mr. Shields and Mr. Conoclat in the bursting into Chef Collins' office, were inconsequential and could not be the basis of determination. And we've argued and I argue here as well, what we've shown and this Court has determined on a number of times that, one, there was a deviation from the standard normally provided. Ginsburg. Counsel, could we go back to the arbitration? Sure. The arbitration decision was that termination was not warranted, but that the actions complained of, flicking a pocket knife at meetings and being disrespectful, that that was conduct that was amenable to discipline, correct? Well, I think the arbitrator pointed out that no discipline had been provided for that. All that was provided was a letter indicating that such behavior in the future would be improper and that one should not bring a pocket knife or my idea was a pocket knife with Mr. Bosnack to the workplace. He did not find that that was something that was a cause for discipline, because he essentially wasn't disciplined. He just got this warning sort of saying, and it wasn't a warning as in a progressive discipline component. It was just a warning to him. If I've satisfied Judge Rawlinson's question, I want to go back to the fact that this Court has found in any number of instances where there's been a deviation from the actual rules and regulations of the workplace that is cause for concern and would be the basis for a possible claim of discrimination. Here the arbitrator's decision one showed that the progressive discipline with regard to the termination had not been followed at all, and therefore, he reinstated Mr. Bosnack. But with a two-week suspension, so he wasn't totally clear. But he was not terminated. Correct. That's the claim that's made. He wasn't terminated, but the actions that were the subject of the discipline were credited by the arbitrator to a certain extent, because the arbitrator did say that a suspension was in order. Not all of the actions were credited, Your Honor. If I'm misunderstanding what you're saying to me, I apologize. But I thought that you were trying to convey that the arbitrator completely vindicated your client. And to me, the record does not support that. At one level, I am saying that because he was vindicated in that he was not terminated. I did not make the argument, and if the Court misunderstood me, I apologize for not being clear. I did not say or imply that there was no punishment given to Mr. Bosnack, but the cause of action, the causes of action here are about determination, essentially. But in the context of pretext, to me it's important whether or not the matters that were the subject of discipline were actually discarded by the arbitrator or partially credited by the arbitrator. Well, again, the operative function being the plural, the actions, there was only one or possibly two out of the eight or nine that they posited for their position of this being the nondiscriminatory basis for his termination. Counsel, in order to prevail on your Title VII claim, you have to offer direct evidence of discriminatory animus or substantial evidence of pretext. What is your showing? Again, with regard to pretext, the arbitrator's decision, for one. Mr. let me finish, Felice. Chef Collins's and Mr. Bosnack's allegations and showing that there was a failure to go through the chain of command to provide an opportunity to correct any disciplinary problems. The third thing, again, was the failure to follow the progressive discipline charges or procedures that the city and county had set out, which we indicated in our initial situation regarding substantive due process. And the reason why we're not pursuing that further is this Court's decision in the class of one case, in Oregon, saying that one had to essentially be barred from employment in other words in order to show a substantive due process claim. But again, there was evidence that there was a failure to follow the appropriate procedures. Is there a case that establishes that's a sufficient showing with respect to either disparate treatment or associational discrimination? Well, I think under Lamb, this Court says that it doesn't have to be a great deal of evidence to that regard. And it's for the fact finder, in this case it would be a jury, to make that determination. I know of no case, Your Honor, that says under these exact circumstances, this is enough. But again, certainly under Sanderson-Plumbing, the Supreme Court said if there is evidence that undermines the position provided by the company, that should be sufficient. Again, part of the problem here is under the McDonnell-Douglas approach is all that the employer has to do is articulate a justifiable reason. And I would posit to the Court here two things. That to show pretext, one only has to show that the underlying positive nondiscriminatory reason is not worthy of belief, or at least should go to the jury in that regard. And I would say that Sanderson takes that position in response to your question. Well, what about the pocketknife incident and the coworker that filed complaints against him? Well, the arbitrator, with regard to the coworker's filing complaints, he found that they had no effect at all in this regard because they were too old and the testimony of Mr. Chant did not substantiate it. With regard, again, to the pocketknife situation, there was not discipline at all given to Mr. Bosnick in that regard. They said that he did something that caused some people concern. And there was a memo that indicated a change in procedure, or at least a clarification of procedure with regard to we don't want you to do this. And again, if one looks at the record, there is no indication whatsoever that it was ever done again. I see I'm down to three minutes. If the Court has no other questions, I would reserve the rest of my time for rebuttal. Your Honors, may it please the Court. Amy Super for the City and County of San Francisco. If I may, I would like to just respond to a few of Mr. Bosnick, Mr. McNeil's points about the issue of pretext. This issue did come up in the court below where Mr. McNeil attempted to make the same argument regarding the arbitrator's decision as pretext. If you'll allow me, Judge James made a finding on that very specific issue. She's noted, and this is at SCR 50, that the arbitration award does not support plaintiff's characterizations of the document. The arbitrator did not find the incidents for which plaintiff was disciplined to be trivial, did not find his allegations not credible. On the contrary, the arbitrator found the City had every right to counsel plaintiff on the inappropriateness of using a pocket knife in this matter, and that the evidence in this case does show plaintiff seemed to have a problem dealing with the fact that he was no longer a chef and was now a cook, and goes on to discuss that. So I think that it's a bit of a red herring to talk about the arbitration decision in this matter. Additionally, the standard in that arbitration proceeding was just cause, which, so there's no question in that proceeding as to whether or not there was discriminatory animus. There's no question as to whether or not the City had any other motivation in its termination of Mr. Bosnack. It was simply a just cause standard, which is completely separate from what we're looking at here today, and I don't think that it shows any pretext whatsoever. In terms of not following their own procedures, we do have evidence in the record that these disciplines can be interpreted in different ways. At SCR 933 and 946, we have the declaration of Willie Ramirez, who was the head of HR for Laguna Honda Hospital at the time, who states, who shows that under the guidelines of uniform discipline, mistreatment of a person can be grounds for discipline on a first offense. So whether or not the arbitrator agreed with that interpretation of the guidelines doesn't go to pretext, we would argue, in this case. I wanted to also address Mr. McNeil's arguments about associational discrimination. Mr. McNeil appears to argue in his brief that, or he does explain in his brief that, that there are different forms of discrimination, but he does explicitly argue in his brief that simply by having an association with a colleague of another race and then receiving an adverse employment action establishes a prima facie case. We would strongly disagree with this interpretation of the law. As we have seen, what the court case law has done is apply to associational discrimination the same McDonnell Douglas framework that we see with regular Title VII race discrimination. You have to go through the same four prongs, with the exception that with the first prong of protected activity, your association with a person in a protected class now becomes your protected class. However, we still keep the same fourth prong, which is the causation prong, which I think is very important and cannot be overlooked. Mr. McNeil has not shown any causation in this case, and I think that's a very important distinction to make. With regard to his retaliation claim, he also would say that he hasn't shown any pretext for the legitimate reasons that the city has given. We think that the legitimate reasons for termination in this case were extremely serious, the flicking of the knife, the verbal harassment of his subordinates, and angry outbursts also towards his supervisors are something that most reasonable people would find someone could be terminated for. And with regard to Mr. McNeil's argument regarding a lack of comparators, he seems to argue that the city inappropriately asserts a standard of inappropriate comparators in his claim for discrimination. Meaning that we are putting too close of a comparison as to who he should be compared to in order to see if he was treated differently from other people. But under Mr. McNeil's own briefing, he said that the appropriate comparator would be another employee with the same supervisors, who is held to the same standard, and who was found to have engaged in similar conduct, and who was then treated differently at that time. Mr. Bosnack has failed to provide any comparators with any of those specific elements. The people that he compared himself to were in a different position, they did not have the same supervisors, and they were held to the same standards. And he has provided no instances of anyone who engaged in similar conduct, which indeed it would be difficult to do, because the conduct he engaged in was so serious. Could you explain a little bit about, just going back to the arbitration, what do the rules provide with respect to that, and what do you think about how he was found? My understanding of Mr. McNeil's argument is that because the arbitrator reinstated Mr. Bosnack after he was terminated with only a two-week suspension, therefore, that per se shows that there was some pretext, or that this termination was wrong, and therefore, because the person was terminated, because they were wrong to have done it, therefore, there must be some discriminatory animus. I think that that's a bit of a conclusory argument, because, as I said, there's no, the arbitrator doesn't even have jurisdiction over claims of discrimination, retaliation, things like that. So his only goal or task in an arbitration is to make sure that the person who is terminated is held to the same standards. And so, again, I think it's important for us to see if the city rose to the just cause standard in terminating Mr. Bosnack, which, again, is a mutually negotiated standard between the city and the union. And part of that is progressive discipline. Did he find that they went through enough progressive discipline before they got to termination? What's the significance of that progressive discipline issue? Well, the significance is that under the just cause standard, there has to be enough progressive discipline before you get to termination. So unless something is very serious, you can skip to termination when there's a very serious matter of conduct. But normally, they want you to go through progressive disciplining, meaning starting with a one-day suspension, moving up to a five-day suspension, five or a ten-day suspension. The city's position, then, in this case, that it was serious enough? Yes, exactly. And I think the fact that... Relying on the knife, relying on the problems of working with other members of the kitchen? Mistreatment of a person, yes. And even under the guidelines in the record where I've cited at SCR 946, it does state that for the conduct of mistreatment of a person on a first offense, that can be grounds for termination. If Your Honors don't have any other questions, I'm happy to submit. Appears not. Thank you, counsel. Thank you. Rebuttal. At risk of beating the proverbial dead horse, going back to the arbitrator's decision, I would just direct the Court to the determination that would be at CER 140, and the paragraph where it talks about the arbitrator's determination, he says, therefore, I've determined that the city did not have just cause to terminate the grievance. However, the city did show that the grievance was on notice, that his behavior was disruptive, and he should have known that confronting Mr. Shields in the manner that he did by interrupting a meeting he was holding was not appropriate. It does not talk about the other things that the city brought up. Therefore, certainly under Alexander v. Gardner, Denver, there is something there, because the Supreme Court said that an arbitrator's decision can be looked at in terms of what is to be shown, going back to Judge O'Scanlan's question with regard to that. The other part of it that is bothersome, progressive discipline is designed in order to put an employee on notice that his or her behavior is improper and can be improved. That's what the situation is about. All of this sort of comes out of the blue, and it's part of the gestalt, or as the Seventh Circuit talked about, the mosaic of discrimination here. Again, Mr. Bosnack's immediate supervisor was never informed of any of these complaints. These people went directly to Willie Ramirez and other people, never going through the process of going through the channels that would provide someone an opportunity. The last part I would like to address would be talking about comparators. And what the city really wants is a clone. The Seventh Circuit has made it very clear that that's not what the standard should be. And the same supervisor, Chef Collins, indicates who the chain of command is, and it's all the people in that particular department. The same standards, Mr. Bosnack pointed out that an individual who had urinated in front of the hospital was not even suspended for any amount of time. The person who allegedly stole had nothing done to her other than to get a warning. So the type of behaviors are certainly comparable in terms of looking at what one should evaluate. It's not, again, the idea that I did exactly the same things, but are they comparable? Counsel, thank you. You've exceeded your time. Thank you to both counsel. The case just argued is submitted for a decision by the court. That completes our calendar for the morning. We are in recess until 9 a.m. tomorrow morning. Thank you, Your Honor.
judges: Schroeder, O'scannlain, Rawlinson